OPINION
{¶ 1} Plaintiff-appellant Jennifer Twiddy appeals from the January 25, 2006, Judgment Entry of the Stark County Court of Common Pleas, Family Court Division.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Jennifer Twiddy and appellee Eric Twiddy were married in 1990 and have three minor children. Pursuant to a Judgment of Divorce filed on December 2, 1999, in North Carolina, the parties were granted a divorce. Appellant was granted custody of the three children. As memorialized in a "Consent Order for Visitation and Child Support" filed in the same court on July 12, 1999, appellee was ordered to pay child support.
 {¶ 3} On September 19, 2000, appellant filed a "Notice of Registration of Foreign Order of Support" in the Stark County Court of Common Pleas, Family Court Division.
 {¶ 4} Pursuant to a Judgment Entry filed on February 16, 2001, in the Stark County Court of Common Pleas, Family Court Division, appellee was ordered to pay child support in the amount of $734.00 per month per child plus $500.00 per month on arrearages of $13,000.00.
 {¶ 5} Subsequently, on May 26, 2005, appellant filed a Motion for Orders to Show Cause, alleging that appellee had "failed, without excuse or justification, to pay child support as ordered by this Court in the amount of $734.00 per month per child for three (3) children, plus an additional amount of $500.00 per month on arrears." On May 26, 2005, appellant also filed a Motion to Determine Child Support Arrearages and Fees. Appellant, in an affidavit filed in the trial court on the same day, indicated that appellee had incurred arrearages in the amount of $26,298.43 through May 24, 2005.
 {¶ 6} Thereafter, on July 25, 2005, appellee filed a Motion to Modify Child Support, Companionship and Tax Exemptions.
 {¶ 7} A hearing on the pending motions was scheduled for October 31, 2005. At the hearing, the parties stipulated that appellee was in contempt for failing to pay child support and also stipulated as to visitation.[1] The following agreement was read into the record by appellee's counsel, with no objection or clarification from appellant's counsel, at the October 31, 2005, hearing: "With regards to child support, as to the issue that there was never any guideline worksheet filed in this case, the parties are in agreement that the child support would remain as was ordered by Judge Hoffman for I believed is started March 1st of `01, so for all of `01 and it would remain at the amount that Judge Hoffman ordered which was 734 per month per child times three plus poundage. Thereafter commencing January 1, of `03 and for the 12 month period of `03, it would be 427.07 per month per child, commencing January 1, of `04 and for that 12 month calendar year it would be 359.97 per month per child plus processing fees and for the period starting January 1, `05 and continuing thereafter it would be 352.14 per month per child plus processing fees. The standard 20% arrearages will be added when he becomes employed. The Court will re-look at that arrearage payment in `06, when we're back here, that'll actually be February not January. And prior to February of `06 hearing, CSEA will recalculate if arrearages based on these figures and the payments that they have received and provide each counsel with an arrearage affidavit and their month by month of whatever breakdown." Transcript of October 31, 2005 hearing at 42-43. As memorialized in a Judgment Entry filed on the same day, the trial court ordered the Child Support Enforcement Agency to recalculate appellee's arrearages.
 {¶ 8} Thereafter, the trial court, in a Judgment Entry filed on November 15, 2005, vacated all prior child support orders as of January 1, 2003, and established new child support amounts. The trial court, in its entry stated, in relevant part as follows:
 {¶ 9} "The Child Support Enforcement Agency is ordered to immediately recalculate arrearages in this matter according to this Entry and to provide copies to both attorneys. Additionally, the payment on arrearages shall be reduced to twenty percent (20%) of the current order effective immediately. The Court may adjust the payment on arrearages at the hearing scheduled in February of 2006. Additionally, it is furtherORDERED, ADJUDGED and DECREED that either party may request a recalculation of child support based on the Defendant obtaining new employment or the Plaintiff becoming aware of any change of circumstances that would justify a recalculation of child support. Nothing in this agreement shall limit the Court from modifying child support at that time."
 {¶ 10} On the same date, appellant filed a Motion to Vacate pursuant to Civ.R. 60(B) seeking to vacate "the agreement that was reached in Court . . . on October 31, 2005." Appellant, in her motion, alleged, in part, that she did not anticipate that appellee's child support arrearages would "completely disappear based upon the retroactive modification" and that such result was neither intended by either of the parties nor in the best interest of the children. Appellant indicated that she had not had the opportunity to "calculate the complete financial aspect of the retroactive modification of child support." Appellant further argued that appellee's failure to respond to discovery had hampered her decision.
 {¶ 11} On November 29, 2005, appellant filed a "Motion to Vacate Judgment Entry", raising the same arguments as in her November 15, 2005, motion.
 {¶ 12} Thereafter, a Nunc Pro Tunc Judgment Entry was filed by the trial court on January 4, 2006, clarifying that all child support orders up through December 31, 2002, were to remain unchanged.
 {¶ 13} A hearing on appellant's Motion to Vacate was held on January 25, 2006. At the hearing, appellant's counsel indicated to the trial court that the retroactive modification of child support arrearages was contrary to law and that the parties intended the approximately $34,000.00 in child support arrearages to be reduced to between $8,000.00 and $9,000.00 as a result of the modification, not to zero. Appellant further argued that, at the time of the October 31, 2005, hearing, appellant did not have the benefit of appellee's responses to discovery. Appellant specifically argued, in relevant part, as follows:
 {¶ 14} "Additionally, when that hearing was held my client did not have the benefit of having her discovery answered by way of interrogatories, by way of motions to produce and request for admissions. I believe approximately a week or two ago I received the request for admissions by the Defendant's counsel wherein he indicated that the documents that he gave to my client's previous counsel, specifically number four, I'll read to the Court: Admit that the 2004 Federal Tax Return submitted to opposing counsel of October 31st, 2005, and I note for the Court, that was the exact day that this case was set for trial. On that day he submitted a 2004 tax return for purposes of negotiating an agreement upon the pending contempt charges. What's incomplete in that it did not reflect your total wages or income for the tax year 2004. And Mr. Twiddy's answer was: 2004 Returns not filed, waiting on fax or copy of 1099 that reflects $15,217.00 for a finder's fee from New Tech Solutions. Your Honor, the documents that were provided to previous counsel on that date were used to come to an agreement that these parties reached, and the fact that he has already, and by, he the Defendant, already admitted that those documents weren't valid because they were not filed, I believe they were obviously used to the detriment of my client as this time." Transcript of January 25, 2006, hearing at 5-6.
 {¶ 15} Pursuant to a Judgment Entry filed on January 25, 2006, the trial court overruled appellant's Motion to Vacate. The trial court, in its entry, noted that the parties had reached an agreement on October 31, 2005, after a morning of negotiations and that appellant, who had been represented by counsel at the October 31, 2005 hearing, was now indicating that the result of the agreement was unintended. The trial court further noted that appellant had not objected to the lack of discovery from appellee at the time of the October 31, 2005, hearing. Finally, the trial court, in its January 25, 2006, Judgment Entry, stated, in relevant part, as follows:
 {¶ 16} "Plaintiff argues the court had no authority to approve her agreement and retroactively modify child support. Defendant points out there is no Guideline Worksheet in the initial order of support. This is registration of foreign decree."
 {¶ 17} Appellant now appeals from the trial court's January 25, 2006, Judgment Entry, raising the following assignments of error:
 {¶ 18} "A. THE TRIAL COURT ERRED IN FAILING TO HOLD AN EVIDENTIARY HEARING WHEN APPELLANT DISPUTED THE TERMS OF AN IN-COURT SETTLEMENT AGREEMENT.
 {¶ 19} "B. THE TRIAL COURT ERRED IN RETROACTIVELY MODIFYING APPELLEE'S DELINQUENT CHILD SUPPORT OBLIGATION.
 {¶ 20} "C. THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING APPELLANT'S CIV. R. 60(B) MOTION TO VACATE."
 {¶ 21} For purposes of judicial economy, we shall address appellant's assignments of error out of sequence. II
 {¶ 22} Appellant, in her second assignment of error, argues that the trial court erred in retroactively modifying appellee's delinquent child support obligation. We agree.
 {¶ 23} As is stated above, the parties, at the October 31, 2005, hearing, agreed to have the Child Support Enforcement Agency recalculate appellee's arrearages as part of the parties' settlement agreement. At the time of the hearing, appellee was in arrears approximately $34,000.00. The trial court, in its November 15, 2005, Judgment Entry, ordered the Child Support Enforcement Agency to recalculate arrearages.
 {¶ 24} However, as noted by this Court in McCain v. McCain, Stark App. No. 2002CA00267, 2003-Ohio-2179, "there is a statute that forbids the retroactive modification of delinquent child support." Id at paragraph 24. Specifically, R.C. Section 3119.83 states as follows: "Except as provided in section 3119.84 of the Revised Code, a court . . . may not retroactively modify an obligor's duty to pay a delinquent support payment."[2] Furthermore, in McPherson v. McPherson (1950),153 Ohio St. 82, 90 N.E.2d 675, the Supreme Court held that due and unpaid installments allowed by the court for the support of a minor child may not be modified. The court in McPherson, specifically held that the trial court had no jurisdiction to modify due and unpaid child support installments. See also Sexton v. Sexton (1971), 32 Ohio App.2d 344,291 N.E.2d 542.
 {¶ 25} More recently, in Hedrick v. Wyno (July 5, 2001), Summit App. No. 20380, 2001 WL 753295, dismissed, appeal not allowed by93 Ohio St.3d 1472, 757 N.E.2d 771, the appellee and the appellant entered into a settlement agreement pursuant to which the appellee released the appellant from his child support obligations and arrearages, in part, in exchange for a lump sum payment. After the trial court refused to sign the proposed order, which set forth the agreement, under the belief that it could not retroactively modify the appellant's arrearages, the appellant appealed, arguing that "[w]here a party voluntarily enters into an agreement modifying past due child support, the party is bound by said agreement."
 {¶ 26} In affirming the judgment of the trial court, the Ninth District Court of Appeals, in Hedrick, stated, in relevant part, as follows: "A strict construction of the language in R.C.3113.21(M)(3)[3] [now 3119.83] clearly indicates that once it is determined that past due child support is owed, a court cannot modify that amount, except for the time period between the motion to modify and the court's final order on the subject. Hence, as this Court recently observed, "[c]ourts may not modify delinquent child support payments retroactively." Zaccardelli v. Zaccardelli (July 26, 2000), Summit App. No. 19894, unreported, at 8, citing R.C. 3113.21(M)(3) [ now 3119.83] and Brightwell v. Easter (1994), 93 Ohio App.3d 425, 429 ("[P]ast due child support * * * is not modifiable after it becomes past due."). The trial court did not err in refusing to approve the parties' settlement agreement." Id at 2. See also Bonenfant v. Bonenfant Bulter App. No. CA2005-03-065, 2005-Ohio-6037.
 {¶ 27} Based on the foregoing, we find that the trial court erred in retroactively modifying appellee's delinquent child support obligation.
 {¶ 28} Appellant's second assignment of error is, therefore, sustained.
 I, III {¶ 29} Based on our disposition of appellant's second assignment of error, appellant's first and third assignments of error are moot.
 {¶ 30} Accordingly, the judgment of the Stark County Court of Common Pleas, Family Court Division is reversed and this matter is remanded for further proceedings.
By: Edwards, J. Farmer, P.J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Domestic Relations Division is reversed and this matter is remanded for further proceedings. Costs assessed to appellee.
[1] Appellee withdrew his motion for tax exemptions.
[2] R.C. Section 3119.84 states that a court may modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the court support order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered.
[3] R.C. 3113.21 was repealed effective March 22, 2001.